UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**FURMAN GILMORE,**

       **Plaintiff,**

v.                                                    1:15-CV-20

**JOSEPH CAREY, Parole Officer, SHANA YANNONE, ANDY JONES, Police Investigator, Catskill Police Department, GREGORY SAGER, Police Lieutenant, Catskill Police Department, FRASCELLO, Police Sargeant, Catskill Police Department, YOUNGBLOOD, New York State Sr. Police Investigator, DONN, New York State Police Investigator, AUGIAR, New York State Police Investigator, WALTER HUBICKI, Doctor, Greene County Jail, DONNA JULIANIO, Nurse, Greene County Jail,**

                                 **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

      Defendants Walter Hubicki and Donna Julianio move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. See dkt. # 72. Plaintiff filed a response to Defendants' motion. See dkt. # 74. The Court has determined to decide the motion on the submissions without oral argument.

1

**I.	BACKGROUND**[1]

On January 10, 2012, prior to his arrest, Plaintiff went to the emergency room with complaints of chest pains, numbness in his hands, and feeling cold. See Deposition of Furman Gilmore from 6/28/2016 ("Gilmore Dep. 6/28/2016"), dkt. # 72-3, at 15. Plaintiff did not complain of back pain at the time, but was admitted to the hospital and administered a steroid along with some medication before being discharged the following day. Id. at 16, 21, 47. On January 11, 2012, Plaintiff was arrested on criminal charges and transported to the Greene County Jail. Id. at 11. During a protective search of Plaintiff's home incident to his arrest, Plaintiff stood up while handcuffed to go to the bathroom. Id. at 77. Officers tackled Plaintiff to the ground and placed him in a chair. Id. Plaintiff complained of back pain, a recurrence of chest pains, and numbness in his hands, wrists, and fingers. Id. at 77-78. Plaintiff had twice before complained of back pain. Id. 79-80. The first complaint came in 1994, after he suffered a gunshot wound to the face. Id. The second came in 2001, after a neighbor's roof collapsed on him. Id. X-rays performed in both previous cases detected no injuries. Id. at 81.

On January 13, 2012, Defendant Walter Hubicki, a physician, performed a routine screening of Plaintiff at the Greene County Jail. Id. at 98. Plaintiff complained of back pain and persistent numbness Id. at 99. Plaintiff told Defendant Hubicki that he needed

---

[1] Although this Court would not normally need to reconstruct a statement of facts, both parties' filings are deficient. Plaintiff is a prisoner proceeding *pro se*. Defendants are represented by counsel, who is reminded that practice before this Court is governed by the Local Rules of Practice for the Northern District of New York. Local Rule 7.1(a)(3) requires "the moving party to submit an accurate and complete Statement of Material Facts" with "a specific citation to the record where the fact is established." See L.R. 7.1(a)(3). Defendants did not comply with this rule. The Court will not tolerate further disregard for the Local Rules.

to schedule an appointment with a neurologist.  Id.  He also asserted he was previously advised to go to the emergency room if numbness persisted.  Id.  After examining Plaintiff, checking for a hernia, and administering a TB test, Defendant Hubicki prescribed Plaintiff aspirin and obtained Plaintiff's permission to contact Plaintiff's hospital to treat the numbness.  Id. at 32, 99-100.  In February, 2012, Plaintiff complained to Defendant Donna Juliano, a nurse, for five consecutive days of partial facial numbness, slurred speech, and constant watering of the eyes.  Id. at 100-102.  Defendant Juliano responded by looking at Plaintiff without saying anything.  Id. at 102.  Plaintiff filed a grievance asking to see Defendant Hubicki, which went unanswered.  Id. at 103.  After writing the Inspector General to complain that his grievances were not being processed, Plaintiff was advised to write the County Sheriff.  Id.  Plaintiff wrote the Sheriff but received no response.  Id. at 103-104.

On February 7, 2012, Plaintiff slipped and fell in his cell, causing neck pain.  Id. at 105; see Medical Records from The Neurology Group LLP ("Neurology Med. R."), dkt. # 72-5, at 1.  Defendant Juliano examined Plaintiff, administered aspirin, and scheduled an examination with Defendant Hubicki.  See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 105.  At a later date, Defendant Hubicki examined Plaintiff, who continued to complain of neck pain.  Id. at 102, 105-106.  Defendant Hubicki prescribed aspirin and referred Plaintiff to Columbia Memorial Hospital.  Id.  On March 5, 2012, doctors at Columbia Memorial Hospital conducted several examinations to determine the cause of Plaintiff's numbness, and concluded that Plaintiff suffered from Bell's Palsy and Conjunctivitis.  See Columbia Memorial Hospital Medical Record from 3/21/2012 ("Med. R. 3/21/2012"), dkt. # 74, at 40.

On March 27, 2012, Plaintiff was examined by Dr. Jeffrey Burdick, a neurologist,

3

who diagnosed Plaintiff with Bell's Palsy and ordered a nerve conduction study and an MRI of Plaintiff's cervical spine. See Neurology Med. R., dkt. # 72-5, at 1-2. On March 30, 2012, Plaintiff had an MRI of his cervical spine and a nerve conduction study by Dr. Richard Levy. See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 110, 114. On April 20, 2012, Plaintiff met with Dr. Burdick and discussed the results of the MRI, which indicated that Plaintiff suffered a cervical spine injury. Id. at 110-111; see Neurology Med. R., dkt. # 72-5, at 4. Dr. Burdick ordered an MRI of Plaintiff's cervical spine with contrast and an MRI of Plaintiff's brain with and without contrast. See Neurology Med. R., dkt. # 72-5, at 4. On April 25, 2012, Plaintiff had the second set of MRIs conducted by Dr. Levy. See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 113-114. In a medical imaging consultation report transcribed on April 26, 2012, Dr. Levy stated,

> Further evaluation for other etiologies including demyelinating and infectious is recommended. This includes MR imaging of the thoracic and lumbar spine, and brain without and with contrast, as indicated.

Columbia Memorial Hospital Medical Imaging Report from 4/25/2012 ("Med. Imaging Rep. 4/25/2012"), dkt. # 1, at 22; See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 114.

On May, 17, 2012, Plaintiff met with Dr. Burdick and discussed the results of the second set of MRIs, which confirmed that Plaintiff suffered a cervical spine injury. See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 111-112; Neurology Med. R., dkt. # 72-5, at 10. Plaintiff was scheduled to return for a follow-up appointment in six months, around October 2012. See Neurology Med. R., dkt. # 72-5, at 11; Gilmore Dep. 6/28/2016, dkt. # 72-3, at 112. Dr. Burdick ordered an additional MRI of Plaintiff's cervical spine with and without contrast to be conducted "in [the] 6 months before the revisit[.]" See Neurology

Med. R., dkt. # 72-5, at 11-12. Defendant Hubicki received copies of Plaintiff's MRI reports. See Med. Imaging Rep. 4/25/2012, dkt. # 1, at 20-22. There is no record indicating that Defendant Hubicki followed-up on Dr. Burdick's last MRI order. Defendant Hubicki never discussed the diagnosis or MRI results with Plaintiff. See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 111. Plaintiff was transferred to the New York State Department of Corrections before October, 2012. Id. at 112. While at the Greene County Jail, Plaintiff met with Defendant Hubicki approximately five times and with Defendant Juliano on a daily basis. Id. at 108-109.

At the New York State Department of Corrections, Plaintiff received two additional MRIs on his lumbar and thoracic spine on October 16, 2012 and February 1, 2013, and received treatment for his back injuries. Id. at 114, 116, 131. Plaintiff asserts Defendants Hubicki and Juliano worsened his back condition by failing to follow up on the MRIs. Id. at 116, 144. Plaintiff's back pain persists since his January 11, 2012 arrest; he has not received treatment for the condition in the past three years. Id. at 118, 131.

Plaintiff, proceeding *pro se*, filed a complaint on January 8, 2015. See Complaint ("Complt."), dkt. # 1. The Complaint alleges that several of the Defendants used excessive force in arresting Plaintiff, and that other Defendants violated his Fourteenth Amendment rights through deliberate indifference to his serious medical needs while incarcerated. Id. Plaintiff also moved for leave to proceed *in forma pauperis*. See dkt. # 6. The Court granted that motion and issued summons. See dkt. #s 7-8. Defendants Donna Juliano and Walter Hubicki answered the Complaint and filed a crossclaim on May 5, 2015. See dkt. # 13.

At some point after filing his Complaint, Plaintiff was released from jail. He did not

inform the Court of a change in his address as required by Local Rule 10.1(c)(2). Defendants moved to dismiss Plaintiff's Complaint, with prejudice, arguing that Local Rule 41.2(b) applies and requires dismissal. Defendants also pointed to Federal Rule of Civil Procedure 41(b). On November 12, 2015, Plaintiff filed a response to Defendants' motions to dismiss. See dkt. # 51. On June 8, 2016, this Court denied Defendants' motions to dismiss. See dkt. # 60. Defendants moved to re-open the discovery period for the limited purpose of taking Plaintiff's deposition, and the motion was granted. See dkt. #s 61, 63. At the end of discovery, Defendants filed the instant motion, bringing the case to its present posture.

## II. LEGAL STANDARD

### A. Summary Judgment

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On a motion for summary judgment, the Court must construe the evidence, resolve all ambiguities, and draws all reasonable inferences in the light most favorable to the nonmoving party. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002); Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005); Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). The movant may show prima facie entitlement to summary judgment in one of two ways: (1) by pointing "to evidence that negates its opponent's claims," or (2) by identifying "those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." Salahuddin v. Goord, 467 F.3d 263, 272-273 (2d Cir. 2006). Summary

judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004).

**B. Deliberate Indifference**

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). This standard applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 66, 72 (2d Cir. 2009) ("[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment").

To establish a claim for violation of a prisoner's rights arising from inadequate medical treatment, a plaintiff must demonstrate that a defendant exhibited "deliberate indifference to [plaintiff's] serious medical needs." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle, 429 U.S. at 104). The "deliberate indifference" standard consists of two parts. Farmer v. Brennan, 511 U.S. 825, 837 (1994). First, an objective "medical need" element measures the severity of the alleged deprivation. Smith v. Carpenter, 316 F.3d 178, 183-184 (2d Cir. 2003). To qualify for Eighth Amendment protection, the medical need must be "in objective terms, 'sufficiently serious.'" Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001) (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991); see Farmer, 511 U.S. at 834 (inmate must establish "substantial risk of serious

7

harm")). Second, a subjective "deliberate indifference" element requires that defendant acted with "a sufficiently culpable state of mind." Id. Deliberate indifference exists when a defendant "knows of and disregards an excessive risk to inmate health or safety." Chance, 143 F.3d at 702 (quoting Farmer, 511 U.S. at 837). A defendant must (1) be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) "draw the inference." Id.

## III. DISCUSSION

Plaintiff claims that Defendants Hubicki and Juliano violated his constitutional rights through deliberate indifference to a serious medical need when they disregarded Dr. Richard Levy's recommendation for a follow-up MRI of Plaintiff's thoracic spine, lumbar spine, and brain. See Compl., dkt. # 1, at 14; Med. Imaging Rep. 4/25/2012, dkt. # 1, at 21-22. Defendants move for summary judgment on three grounds. First, they contend that no evidence exists to prove that the medical treatment Plaintiff received at the Greene County Jail was so woefully inadequate as to amount to no treatment at all. Second, they argue that Plaintiff failed to meet the two-part deliberate indifference test in Farmer. Finally, Defendants insist that they are entitled to "absolute and/or qualified immunity."[2]

---

[2] Defendants claim they are "entitled to absolute and/or qualified immunity" without citing to any authority for that position. The Supreme Court has held that legislators engaged in traditional legislative functions, judges performing adjudicative functions, prosecutors acting within the scope of their duty in presenting a case, and witnesses who testify in court are absolutely immune from section 1983 actions for damages. See Bogan v. Scott-Harris, 523 U.S. 44 (1998); Pierson v. Ray, 386 U.S. 547 (1967); Stump v. Sparkman, 435 U.S. 349, (1978); Imbler v. Pachtman, 424 U.S. 409 (1976); Briscoe v. LaHue, 460 U.S. 325 (1983). The Supreme Court has held that school board members, state mental institution administrators, law enforcement officers, prison officials, and state and local executives are entitled to qualified immunity while performing their governmental duties if they do not violate rights spelled out by "clearly established" law. See Harlow v. Fitzgerald, 457 U.S. 800 (1982); O'Connor v. Donaldson, 422 U.S. 563 (1975); Pierson v.

8

See Motion, dkt. # 72-6, at 8.

To determine objectively if a serious medical need existed, the Court asks "whether 'a reasonable doctor or patient would find it important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Salahuddin, 467 F.3d at 280 (quoting Chance, 143 F.3d at 702). Courts have held that a serious back condition that results in substantial pain qualifies as a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (holding that a claim alleging a back condition that resulted in pain so serious it caused the prisoner to fall down sufficiently pleaded a serious medical need); Shepherd v. Powers, No. 11cv6860, 2012 U.S. Dist. LEXIS 141179, at *6 (S.D.N.Y. Sept. 27, 2012) ("Severe back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment"). The record indicates that Defendants' Hubicki and Juliano noted Plaintiff's back condition and prescribed medication to alleviate the pain. See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 32, 99-100. At Columbia Memorial Hospital, two specialized physicians, Dr. Jeffrey Burdick and Dr. Richard Levy, ordered several MRIs of Plaintiff's spine. Id. at 110-111. The doctors found that Plaintiff suffered from a cervical spine injury, which required Plaintiff to have an MRI of his spine every six months. Id. at 112. Such pain may be considered sufficiently serious for Eighth Amendment purposes.

---

Ray, 386 U.S. 547 (1967); Procunier v. Navarette, 434 U.S. 555 (1978); Davis v. Scherer, 468 U.S. 183 (1984). A defendant who raises the defense of immunity, has the burden of demonstrating that the "conduct was justified by an objectively reasonable belief that it was lawful." See Gomez v. Toledo, 446 U.S. 635 (1980). As the Court decides for Defendants on the merits of this claim, the Court will decline to address the immunity issue.

9

Plaintiff complains here of a delay in providing treatment for his pain. See Complt., dkt. # 1, at 14. In analyzing the seriousness of the alleged deprivation caused by a delay "in the provision of otherwise adequate medical treatment," courts focus on "the challenged *delay* or *interruption* in treatment" instead of the "*underlying medical condition* alone." Smith, 316 F.3d at 185 (emphasis in original). Here, there is no evidence that the delay in providing Plaintiff with his follow-up MRI between May 2012 and October 2012 resulted in any harm to Plaintiff. Plaintiff's assertion that the delay worsened his back condition is unsupported by the facts. Plaintiff admits that his back pain today is the same as it was on the January 11, 2012, the day of his arrest. See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 118, 131. Plaintiff also admits that he has not received treatment for his back in the past three years. Id. As there is no evidence of serious and substantial back pain, and no evidence that a delay in medical care caused the pain to worsen, the Court finds Plaintiff has not satisfied the objective element of the deliberate indifference test.

Even assuming that Plaintiff has met the objective element, he could not satisfy the subjective component to meet this element, "some mental element must be attributed to the inflicting" Defendants. Wilson, 501 U.S. at 300. To satisfy the subjective element, Plaintiff must show that Defendants acted with "a sufficiently culpable state of mind." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Deliberate indifference requires that the charged officials act or fail to act while actually aware of a substantial risk of serious harm to the prisoner. Farmer, 511 U.S. at 836-837. A sufficiently culpable state of mind is absent when the defendant denies, delays, or interrupts the plaintiff's medical treatment out of sincere and honest belief that such action is medically justifiable. Johnson v.

10

Wright, 412 F.3d 398, 404 (2d Cir. 2005). Here, there is no evidence of a delay.[3] On May, 17, 2012, Dr. Burdick scheduled Plaintiff for a revisit in six months, around October 2012. See Neurology Med. R., dkt. # 72-5, at 11; Gilmore Dep. 6/28/2016, dkt. # 72-3, at 112. Dr. Burdick ordered follow-up MRIs to be conducted "in [the] 6 months before the revisit[.]" See Neurology Med. R., dkt. # 72-5, at 11-12. The record indicates that Plaintiff was transferred to the New York Department of Corrections before his next visit. See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 111. The follow-up MRIs would be delayed if the six months had passed and Defendants Hubicki and Juliano failed to follow Dr. Burdick's orders. The facts here do not support that supposition. Plaintiff was transferred to the New York State Department of Corrections before the six months expired. See Id. at 116, 144.

Although Estelle and Farmer call for a determination of whether inadequate care resulted from accident, inadvertence, or error, or whether it resulted from deliberate indifference through the conscious disregard of a substantial risk of harm, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Claims of negligent treatment or medical malpractice, or claims based on differences of opinion as to matters of medical judgment are insufficient

---

[3] Defendants do not offer any medical justification for the delay or address Defendants' states of mind. They simply deny Plaintiff's pleadings, claiming that Plaintiff did not meet the subjective element because Plaintiff "clearly" cannot prove that Defendants had a culpable state of mind. See Memorandum of Law ("Memo.") to Motion, dkt. # 72-6, at 9-10.

11

to state a claim under section 1983.  Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991).

The delay from February to March does not demonstrate Defendants' awareness of a substantial risk to Plaintiff.  See Johnson, 412 F.3d at 404.  Nor does the delay suggest a denial of all treatment or an interference with treatment.  See Estelle, 429 U.S. at 104-105.  The exhibits and affidavits in the record do no show that Defendants denied all care to Plaintiff, and do not show interference with any prescribed treatment.  Plaintiff simply disagreed with his treatment.  "Not every lapse in medical care is a constitutional wrong." Salahuddin, 467 F.3d at 279.  Deliberate indifference exists when a defendant "knows of and disregards an excessive risk to inmate health or safety."  Chance, 143 F.3d at 702 (quoting Farmer, 511 U.S. at 837).

Defendants would have had a sufficiently culpable state of mind if they denied, delayed, or interrupted Plaintiff's medical treatment absent a sincere and honest belief that such action was medically justifiable.  See Johnson, 412 F.3d at 404.  Here, however, the evidence shows the opposite.  Plaintiff received frequent medical treatment while in the Greene County Jail.  Plaintiff was incarcerated on January 11, 2012.  The record indicates that Plaintiff was transferred to the New York Department of Corrections before his follow-up appointment with Dr. Burdick, which was scheduled to occur on October 2012.[4]  In the nine months at the Greene County Jail, Plaintiff was examined at least five times by specialists at Columbia Memorial Hospital, met with Defendant Hubicki five times, and with Defendant Juliano on a daily basis.  See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 98, 102,

---

[4] It is unclear exactly how long Plaintiff remained at the Greene County Jail.  From the surrounding context, and resolving this ambiguity in the light most favorable to Plaintiff, the Court will assume Plaintiff was incarcerated at Greene County Jail for nine months.

12

105-106, 110-114; Neurology Med. R., dkt. # 72-5, at 1-2, 4, 11-12; Med. Imaging Rep. 4/25/2012, dkt. # 1, at 20-22. Plaintiff was prescribed medication whenever he complained of back pain, received an X-ray, a nerve conduction study, and four MRIs. See Gilmore Dep. 6/28/2016, dkt. # 72-3, at 32, 81, 99-100, 102, 105-106, 110, 113-114; Neurology Med. R., dkt. # 72-5, at 1-2, 4, 11-12. There is no evidence in the record that the Defendants ignored Plaintiff's complaints or refused to treat him. Nothing indicates that any delay posed "an unreasonable risk of serious damage" to Plaintiff's then, current, or future health in a way that violates contemporary standards of decency. Helling v. McKinney, 509 U.S. 25, 35-36 (1993). The facts establish that Defendants were not deliberately indifferent to Plaintiff's serious medical needs. Hathaway, 37 F.3d at 66. No reasonable juror could find the subjective component of the deliberate indifference test satisfied. The Defendants' motion will be granted.

## IV. CONCLUSION

For the reasons stated above, the motion for summary judgment of Defendants Hubicki and Juliano, dkt. # 72, is hereby GRANTED.

IT IS SO ORDERED

_____
Thomas J. McAvoy
Senior, U.S. District Judge

Dated: May 16, 2017